1    WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Sara Ybarra-Johnson; Karla Johnson,        No. CV-14-00171-PHX-GMS

10                          Plaintiffs,          **ORDER**

11   v.

12   State of Arizona, et al.,

13                          Defendants.

14          Pending before the Court is Defendants Arizona Department of Economic Security

15   ("AZDES"), Arizona Division of Children, Youth and Families ("DCYF"), Child

16   Protective Services ("CPS") and the individual AZDES, DCYF, and CPS employees'

17   Motion to Dismiss Non-Jural Entities and Individual State Defendants. (Doc. 84.) For the

18   following reasons, the Motion is granted. Because all Defendants to this case have been

19   dismissed, Plaintiffs' Demand for Production of Discovery and Documents Denied Since

20   2009 (Doc. 89) is denied as moot.

21                              **BACKGROUND**

22          As the Court has detailed in previous orders (*see* Doc. 82), this case arises from

23   the termination of Plaintiff Sara Ybarra-Johnson's parental rights to three of her minor

24   children. On May 16, 2011, the Superior Court of Maricopa County granted AZDES'

25   Motion to terminate Ybarra-Johnson's parental rights as to I.E.J, born March 2008, and

26   W.P, born October 2009. (Doc. 1 at 38–48.) On August 30, 2012, the Superior Court of

27   Maricopa County granted ADES's Motion to terminate Ybarra-Johnson's parental rights

28   as to J.J., born June 2011. (*Id.* at 55.)  Officials seized Plaintiffs' fourth and youngest

child in February 2014.

Ybarra-Johnson and her mother, Plaintiff Karla Johnson, filed the present action on January 29, 2014. (Doc. 1.) Their Complaint seeks relief pursuant to 42 U.S.C. § 1983 for violations of their First, Fourth, and Fifth Amendment rights, violations of the False Claims Act, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Intentional Interference with Parental Rights, and various federal criminal statutes. Plaintiffs seek damages, injunctive relief, declaratory relief, and the referral of Defendants for criminal prosecution. Plaintiffs bring these claims against a variety of Defendants including the State of Arizona, AZDES, DCYF, CPS, various employees of those entities, the Phoenix Police Department, and various Phoenix Police Department Officers. (*Id.* at 10–16.)

On July 29, 2014, the Court granted the State of Arizona, Phoenix Police Department, and individually named Phoenix Police Department Officers' Motion to Dismiss. (Doc. 82.) Now AZDES, DCYF, CPS, and the individually named employees of those agencies (the "individual state defendants") move to dismiss. (Doc. 84.)

**DISCUSSION**

**I.     Legal Standard**

Rule 12(b)(6) is designed to "test the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 555. Accordingly, a plaintiff must do more than employ "labels," "conclusions," or a "formulaic recitation of the elements of a cause of action." *Id.*

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## II.    Analysis

### A.    Federal Rule of Civil Procedure 8(a)

A complaint filed in federal court is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must set forth a set of facts that serves to put the defendants on notice as to the nature and basis of the claims. Failure to set forth claims in such a manner does not provide fair notice to the defendants as to the plaintiff's claims and the grounds upon which they rest. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

Here, Plaintiffs' Complaint includes some conclusory allegations, and the commingling of facts and claims has placed the onus on the Court to decipher which, if any, facts support which claims, as well as to determine whether Plaintiffs have sufficiently stated a right to any of the relief sought. However, a document filed *pro se* is "to be liberally construed" and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted). As such, the Court declines to dismiss the Complaint in its entirety for Plaintiffs' failure to strictly adhere to the federal

1   pleading requirements. *See Twombly*, 550 U.S. at 544. Nevertheless, the Court finds that

2   Plaintiffs' occasional references in the Complaint to violations of the False Claims Act

3   and "hate crime" statutes are too vague and conclusory to satisfy the standard of Rule

4   8(a) and are dismissed for failure to state a claim. (*See* Doc. 1 at 4.)

5         **B.**      **AZDES, CPS, and DCYF**

6         Under the Eleventh Amendment, a state is immune from suit under state or federal

7   law by private parties in federal court absent a valid abrogation of that immunity or an

8   express waiver by the state. *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ.*

9   *Expense Bd.*, 527 U.S. 666, 670 (1999). This immunity extends to state agencies as well.

10  *Florida Dep't of State v. Treasure Salvors, Inc*., 458 U.S. 670, 684 (1982); *Dittman v.*

11  *California*, 191 F.3d 1020, 1025 (9th Cir. 1999).

12        Plaintiffs have not alleged any abrogation or waiver of Arizona's sovereign

13  immunity. In view of the foregoing, to the extent that Plaintiffs have claims against

14  AZDES, DCYF, and CPS independent of those pleaded against the State of Arizona,[1]

15  (*see* Doc. 1 at 30–31, 33–36), such claims are dismissed because these entities are equally

16  unamenable to suit.

17        **C.**      **Individually Named State Defendants**

18              **i.**      **Claims for Injunctive Relief**

19        Plaintiffs request a variety of injunctive and declaratory relief relating to

20  Defendants' alleged constitutional and RICO violations and the pendant state-law claim

21  of Intentional Interference with Parental Rights. In particular, Plaintiffs seek "[a]n order

22  to void and vacate the underlying [state] judicial orders regarding termination of [their]

23  parental rights . . . [and] an order compelling the state of Arizona to immediately return

24  sole custody of these children to their natural mother." (*See id.* at 5, 35.)

25        The *Rooker-Feldman* doctrine "bars federal courts from exercising subject-matter

26  jurisdiction over a proceeding in which a party losing in state court seeks what in

27  _____

28        [1] As noted above, the State of Arizona has already been dismissed as a Defendant
    pursuant to the Eleventh Amendment. (*See* Doc. 82 at 3.)

substance would be appellate review of the state judgment . . . based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Doe v. Mann*, 415 F.3d 1038, 1041 (9th Cir. 2005) (citing *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994) (internal quotation marks omitted)). In essence, *Rooker-Feldman* prohibits claims by a party who is asserting as her injury legal errors by the state court and seeking as her remedy relief from the state court judgment, *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003), as well as all ancillary claims that are "inextricably intertwined" with the state court's judgment. *Cooper v. Ramos*, 704 F.3d 772, 782 (9th Cir. 2012).

Here, Plaintiffs' claims for injunctive relief arising from the Maricopa County Superior Court case amount to a de facto appeal of the state court's decision. The Court could not grant Plaintiffs their requested remedies without reviewing the superior court's final judgment concerning the removal of Plaintiff Ybarra-Johnson's children and its findings concerning the medical neglect charges that resulted in the termination of her parental rights. (*See* Doc. 1 at 21.) The Court lacks jurisdiction over such a review and, therefore, the non-monetary relief Plaintiffs seek is precluded by *Rooker-Feldman*.

**ii.    Claims for Compensatory Relief**

The *Rooker-Feldman* jurisdictional bar also applies to damages claims where a plaintiff cannot prevail unless the district court determines that the state court erred in its decisions pertaining to the custody of her children. Therefore, Plaintiffs may not recover damages under § 1983 or other federal statutes to compensate them for injuries *inflicted* by the state court's termination of her parental rights. *See Noel*, 341 F.3d at 1165. However, Plaintiffs' suit also seeks money damages that resulted from the alleged misconduct of the individual state defendants in their investigation of abuse and removal of I.E.J., W.P., and her other children. Thus, while this Court is precluded from assessing whether Plaintiff Ybarra-Johnson's parental rights should have been terminated, *Rooker-Feldman* does not bar Plaintiffs' claims concerning whether the initial seizure of the children and subsequent CPS investigation was conducted in a reasonable and unbiased fashion. *See id.* ("[W]here the federal plaintiff does not complain of a legal injury caused

by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker–Feldman* does not bar jurisdiction."); *see also Amor v. Arizona*, CIV 06-499-TUC-CKJ, 2009 WL 529326 (D. Ariz. Feb. 27, 2009) (finding *Rooker-Feldman* did not require court to dismiss all of plaintiff's constitutional claims against state officials over incidents arising out of dependency and custody proceedings in state court).  Because judgment for the Plaintiffs on several of the issues before the Court would not necessarily undermine the decision in the superior court case, *Rooker-Feldman* does not entirely dispose of Plaintiffs' claims against the individual state defendants. Therefore, the Court will consider each of Plaintiffs' allegations in turn under the liberal pleading standard of Federal Rule of Civil Procedure 8(a) to determine whether they have stated any plausible claims that may entitle them to relief. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft*, 556 U.S. at 678.

### 1.    § 1983 Claims

"To state a claim for relief in an action brought under § 1983, [plaintiffs] must [allege] that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In this case, Plaintiffs are alleging violations of their First, Fourth, and Fifth Amendment rights, as incorporated to the states through the Fourteenth Amendment. (*See* Doc. 1 at 32.)

Section 1983 does not contain a limitations period, so federal courts look to the applicable state statute of limitations to determine whether a complaint brought under § 1983 is timely. Section 1983 actions are characterized as personal injury actions for purposes of identifying the applicable statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In Arizona, the relevant provision is Arizona Revised Statutes § 12-542, which provides for a limitations period of two years from the date the cause of action

accrues. Although state law provides the statute of limitations, federal law determines when a civil rights claim accrues. *Morales v. City of Los Angeles*, 214 F.3d 1151, 1154 (9th Cir. 2000). Under federal law, the time limit on a cause of action begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Trotter v. Int'l Longshoremen's & Warehousemen's Union Local 13*, 704 F.2d 1141, 1143 (9th Cir. 1983). If, however, a plaintiff can show that her injuries are occasioned by a series of unlawful acts that are "related closely enough to constitute a continuing violation," and that "one or more of the acts falls within the limitations period," she may seek relief for events outside of the limitations period. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). This "continuing violation" exception applies to § 1983 actions. *Id.* In general, dismissal on statute of limitations grounds is disfavored where the complaint, liberally construed in light of our "notice pleading" system, adequately alleges facts showing the potential applicability of tolling. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1276–77 (9th Cir. 1993).

Plaintiffs' § 1983 claims are time-barred because the Maricopa County Superior Court order was entered on May 16, 2011, and the Complaint was not filed until January 29, 2014—more than two years later. (*See* Doc. 84 at 6.) Although the Complaint sets forth allegations about an ongoing and continuous dispute between Plaintiffs and Defendants over the custody of Ybarra-Johnson's children, the facts do not give rise to the conclusion that Plaintiffs suffered the kind of injury for which the statute of limitations may be tolled. According to the facts as alleged, since the initial removal of Ybarra-Johnson's sons from her custody, Defendants have filed false reports to the court, threatened and coerced Plaintiffs, fabricated favorable evidence, suppressed exculpatory documents, and otherwise engaged in a course of conduct that violated Plaintiffs' constitutional rights. (*See* Doc. 1 at 4, 21, 25.) However, the "continuing violations" doctrine was not designed to extend the statute of limitations in cases involving discrete unlawful acts or continuing ill effects from an injury occurring outside the limitations period.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Knox*, 260

F.3d at 1014–15. The allegations of the Complaint alone, even liberally construed in light of our notice pleading system, do not properly yield a finding that Plaintiffs' § 1983 claims arising out of the seizure of I.E.J. and W.P. and the subsequent custody hearing are timely. Plaintiffs knew or had reason to know of their injuries on the date that the children were removed from the home. Although the Plaintiffs have alleged wrongful acts on behalf of Defendants that occurred after the initial removal of Ybarra-Johnson's eldest children, at most Plaintiffs have identified several discrete, injury-producing acts of which the Plaintiff should have been aware when they occurred—not a continuing violation. Each of these acts alleged occurred more than two years prior to the filing of Plaintiffs' Complaint. Therefore, dismissal on the ground that the action is time-barred is appropriate.

## 2.    RICO Violations

RICO actions are governed by a four-year statute of limitations, *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987), and there has been no contention that Plaintiffs' claims are untimely. Moreover, Defendants' Motion to Dismiss fails to explain how this case is barred by *Rooker-Feldman*, since Plaintiffs' claimed injuries do not stem from the state court judgment. As the Supreme Court held in *Exxon Mobil*, the *Rooker-Feldman* doctrine does not deprive a district court of subject-matter jurisdiction

> simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (internal quotation omitted). To the extent that Plaintiffs' Complaint seeks money damages for alleged violations of RICO, these claims would appear to fall within this exception to the *Rooker–Feldman* doctrine described in *Exxon Mobil*. Defendants raise no arguments that Plaintiffs' RICO claims are barred by res judicata or collateral estoppel, so the Court

1    will consider whether the Complaint states a viable claim for relief under RICO.

2          To state a civil claim under RICO, a plaintiff must allege "(1) conduct (2) of an

3    enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs'

4    'business or property.'" *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (quoting 18

5    U.S.C. § 1964(c)). A state or municipal governmental entity may properly be charged as

6    a RICO enterprise, so long as Plaintiffs sufficiently pleaded that Defendants perpetrated

7    crimes that qualify as predicate acts under § 1961(1). *United States v. Freeman*, 6 F.3d

8    586, 597 (9th Cir. 1993). The Court need not reach that issue, though, because it is clear

9    that Plaintiffs have not alleged a crucial element of a RICO claim, that they suffered

10   concrete financial loss to their "business or property." Rather, Plaintiffs allege only

11   personal injuries. Any emotional distress or damage to Plaintiffs' family relationships

12   caused by Defendants' actions does not qualify as an injury to business or property under

13   RICO. *See Diaz v. Gates*, 420 F.3d 897, 899–900 (9th Cir. 2005). Therefore, the

14   Defendants' Motion to Dismiss as to this claim is granted.

15                    **3.     Tort of Custodial Interference**

16         Plaintiffs' last cause of action, tortious interference with parental relations, is not

17   clearly established in Arizona. However, absent any contrary precedent, Arizona courts

18   follow the Restatement. *Wilson v. U.S. Elevator Corp.*, 193 Ariz. 251, 255–56, 972 P.2d

19   235, 239–40 (Ct. App. 1998). The Restatement (Second) of Torts defines custodial

20   interference as follows:

21              One who, with knowledge that the parent does not consent,
               abducts or otherwise compels or induces a minor child to
22             leave a parent legally entitled to its custody or not to return to
               the parent after it has been left him, is subject to liability to
23             the parent.

24   Restatement (Second) of Torts § 700 (1977); *see also Rodriguez v. City of Phoenix*,

25   CV05-2092 PHX-DGC, 2007 WL 411832 (D. Ariz. Feb. 5, 2007). Nevertheless, even if

26   Plaintiffs could establish that tortious interference as a cause of action exists in Arizona,

27   from the facts of the case it appears that Plaintiffs would be precluded from bringing the

28   action by the *Rooker-Feldman* doctrine. The premise of Plaintiffs' suit to obtain damages

for wrongful interference is that the decision by the Maricopa County court to terminate Plaintiffs' parental rights was incorrect: Plaintiffs have pleaded that their emotional distress was caused by the defendants' "active and wrongful effort[s] to remove custody," that resulted "in a loss of [their] parental rights and filial consortium." (*See* Doc. 1 at 34.) Thus, Plaintiffs' alleged right to custody is the essential link between the defendants' misconduct and the Plaintiffs' injuries. This claim of right was decided adversely to Plaintiffs in the Arizona suit, and, therefore, the Court could not give Plaintiffs the relief they seek without in effect reviewing and reversing the Arizona court. *See Anderson v. State of Colo.*, 793 F.2d 262, 263 (10th Cir. 1986) (finding lawsuit attempting to undo custody decision of state court within parameters of *Rooker-Feldman*).

> **D.     Plaintiffs' Demand for Document Production**

Plaintiffs have requested an Order instructing Defendants to comply with their discovery obligations under Federal Rules of Civil Procedure 26(1)(A) and 37. (*See* Doc. 89.) However, since there are no Defendants remaining as parties to this action, Plaintiffs' demand is denied as moot.

### CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Dismiss Non-Jural Entities and Individual State Defendants (Doc. 84) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Demand for Production (Doc. 89) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to terminate this action and enter judgment accordingly.

Dated this 12th day of November, 2014.

*A. Murray Snow*
_____
G. Murray Snow
United States District Judge